IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael Hilton, #320363, | ) C/A No.: 1:12-1540-TMC-SVH |
| Petitioner, | ) |
| vs. | ) |
| | ) REPORT AND RECOMMENDATION |
| Warden M. McCall, Lee Correctional Institution, | ) |
| Respondent. | ) |

Petitioner Michael Hilton is an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections. He filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [Entry #16, #17]. Petitioner filed a response on October 19, 2012. [Entry #20]. This matter returns to the undersigned on the Honorable Timothy M. Cain's order of April 16, 2013 [Entry #26], to equitably toll the statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214 ("AEDPA") and to consider Petitioner's claims.  Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.    Factual and Procedural Background

At Petitioner's guilty plea, Lieutenant Rudy Tisdale of the Williamsburg County Sheriff's Department testified as to his investigation into the events giving rise to the underlying criminal indictment in this case.  On Christmas Day 2004, at approximately 2:30 a.m., Louis Henry and Benjamin George were closing their nightclub in Greeleyville, South Carolina, when Petitioner drove up with passengers Glen Wilson and Terrance Bradshaw. [Entry #16-1 at 21–22, 91]. Petitioner walked into the nightclub and then walked back out.  *Id.* at 22.  Thereafter, Wilson walked in, demanded money, and then shot George, who played dead.  *Id.*  George indicated that Bradshaw also entered the nightclub. *Id.*  Wilson fatally shot Henry multiple times in the nightclub. *Id.* Lt. Tisdale testified that George identified Wilson as having dated his niece and also identified Petitioner. *Id.* at 22–23.  Petitioner turned himself into law enforcement after seeing his name on the local news.

Petitioner was indicted by the Williamsburg County grand jury during the October 2005 term of court for murder, assault and battery with intent to kill ("ABWIK"), possession of a firearm during a violent crime, armed robbery, and criminal conspiracy (2005-GS-45-181). [Entry #16-1 at 138–140; #16-2]. Petitioner faced life imprisonment for murder, 25 years on ABWIK, 5 years for firearm possession, 30 years for armed robbery, and 5 years for criminal conspiracy. [Entry #16-1 at 67]. Petitioner was represented by Steven Smith McKenzie, Esq., and pled guilty on February 5, 2007, to armed robbery before the Honorable Clifton Newman, Circuit Court Judge. [Entry #16-1

2

at 3–32]. Pursuant to a negotiated sentence, Judge Newman sentenced Petitioner to 25 years for armed robbery, and the remaining charges were dismissed. *Id.* at 28–29. Petitioner did not appeal his plea or sentence.

Petitioner filed a pro se application for post-conviction relief ("PCR") on November 8, 2007, in which he alleged ineffective assistance of counsel, Brady disclosure rule violation, destruction of evidence, and involuntary guilty plea. [Entry #16-1 at 33–52]. A PCR evidentiary hearing was held before the Honorable George C. James Jr. on September 18, 2008, at which Petitioner and his counsel, Verdell Barr, Esq., appeared. [Entry #16-1 at 62–122]. On November 12, 2008, Judge James filed an order of dismissal. [Entry #16-3].

Nearly two years later, on August 11, 2009, Petitioner filed a pro se notice of PCR appeal. [Entry #16-4]. On August 25, 2009, the South Carolina Supreme Court dismissed the appeal, finding the notice of appeal was not timely served. [Entry #16-1 at 60–61]. The remittitur was issued on September 10, 2009. [Entry #16-6].

Petitioner filed a second PCR application on November 24, 2009 (2009-CP-45-406). [Entry # 16-1 at 123–129]. Counsel for both parties consented to the dismissal of the second PCR and the grant of a belated appeal, as memorialized by order dated July 23, 2010. [Entry # 16-1 at 135–137].

Petitioner timely filed a notice of PCR appeal on August 16, 2010. [Entry #16-7]. Appellate Defender Wanda H. Carter of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented Petitioner on appeal. On May 31,

2011, counsel filed a petition for writ of certiorari for a belated appeal [Entry #16-8], together with a *Johnson*[1] petition for writ of certiorari in the Supreme Court of South Carolina pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991), raising the following issue:

> Trial counsel erred in allowing a guilty plea to be entered where petitioner gave an exculpatory statement, which was ultimately lost or destroyed, because had counsel advised that a trial would have been the better option due to the missing statement, then an argument for the dismissal of the case on a due process violation ground would most likely have been successful as the statement was apparently missing as a result of bad faith on behalf of state officials.

[Entry #16-9 at 3]. Attorney Carter certified to the court that the *Johnson* petition was without merit and asked to be relieved as counsel. [Entry #16-9 at 9]. Petitioner filed a pro se response. [Entry #16-12].

On April 4, 2012, the Supreme Court of South Carolina granted the petition for a belated appeal and denied the *Johnson* petition. [Entry #16-13]. The court granted counsel's motion to be relieved of appointment. *Id.* Petitioner filed a petition for

---

[1] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

rehearing [Entry #16-14], which the court denied on May 21, 2012.  [Entry #16-15]. The remittitur issued on May 21, 2012. [Entry #16-16].

On June 7, 2012, Petitioner filed this federal petition for a writ of habeas corpus. [Entry #1]. [2]

II.     Discussion

A.     Federal Habeas Issues

Petitioner states the following four grounds in his habeas petition:

**Ground One:**     Ineffective assistance of counsel:
a)     Plea counsel advised Petitioner to tell the plea judge that Petitioner received $100 after the robbery;
b)     PCR court erred in not applying *Boykin v. Alabama,* 395 U.S. 238 (1969);
c)     Plea counsel never explained potential available defenses ("Defenses Claim");
d)     Plea counsel never advised Petitioner of his right against self-incrimination ("Incrimination Claim"); and
e)     Petitioner indicates that he thought counsel would have provided different advice had counsel obtained  statements from the solicitor's office.  Petitioner also contends that the appellate court erred in the handling of Petitioner's belated direct appeal.

**Ground Two:**     Brady disclosure violation that the prosecutor failed to produce Petitioner's verbal statement to Lt. Rudy Tisdale because it would have helped prove Petitioner did not fire any shots, did not have a weapon, and that codefendant Bradshaw was not in the club [Entry #16-1 at 90–91] ("Brady Claim");

_____

[2] The petition was received by the court on June 8, 2012, and docketed on June 20, 2012. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack,* 487 U.S. 266 (1988). Petitioner dated his petition June 6, 2012, but his envelope indicates the petition was deposited in the Lee Correctional mailing system on June 7, 2012. [Entry #1-5 at 2].

**Ground Three:**    Prosecutorial misconduct for allegedly destroying Petitioner's second statement ("Prosecutorial Misconduct Claim"); and

**Ground Four:**    Involuntary guilty plea

[Entry #1-1 at 1].

B.    Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other

means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

7

2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
>      (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>      (B)    (i) there is an absence of available State corrective process; or
>
>            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

8

> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a

---

[3] In *Bostick v. Stevenson*, 589 F.3d 160, 162−65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in

PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir.2000)(internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed

_____

*Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

discretionary review by the South Carolina Supreme Court *"outside* of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854.  As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a

11

second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker,* 517 F.3d 700, 714 (4th Cir.), *cert. denied,* 555 U.S. 868 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must

also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4.     Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S.___, ___, 130 S.Ct. 1473, 1485,

(2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.,* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

    D.    Analysis

        1.    Procedural Bar

As an initial matter, Respondent argues that Petitioner procedurally defaulted on the following claims: 1) Ground One Defenses Claim and Incrimination Claim; 2) Ground Two Brady Claim; and 3) Ground Three Prosecutorial Misconduct Claim.

Respondent argues these claims are barred from federal habeas review because they were not raised to or ruled upon by the PCR court, and are therefore not preserved for appellate review. *Plyler v. State*, 424 S.E.2d 777 (1992) (issue must be both raised and ruled upon by the PCR court to be preserved for appellate review); *Coleman v. Thompson*, 501 U.S. 722 (1991).

14

a.     Ground Two and Ground Three

Grounds Two and Three both concern a verbal statement that Petitioner gave to Lt. Tisdale. In Ground Two, Petitioner asserts a Brady claim, arguing the prosecutor allegedly failed to produce his verbal statement. In Ground Three, Petitioner alleges the state destroyed his statement.  At the PCR hearing, plea counsel testified that he had talked with Lt. Tisdale, and Lt. Tisdale did not have a [written or recorded] statement, but that in his verbal statement, Petitioner had downplayed his role in the crimes, although he admitted he was at the scene and observed what happened.  [Entry #16-1 at 101]. Plea counsel also testified that he believes the statement was "just oral" and was not tape recorded.  *Id.* at 105.  Trial counsel further testified that he had no information that law enforcement intentionally destroyed the alleged statement, nor did he have any reason to believe that they would.  *Id.* at 106.

At the PCR hearing, Petitioner testified that he believed his verbal statement had been recorded because the officer took "the phones off the hook." [Entry #16-1 at 84].  It appears that Petitioner believes that his verbal statement must have been recorded and later transcribed, but not produced, and instead destroyed.  Plea counsel testified that he had requested all Brady materials, and by Petitioner's testimony, all discovery was provided, except for Petitioner's verbal statement to Lt. Tisdale. Respondent argues that from this evidence, Petitioner failed to show that a transcribed statement had been in the possession of the prosecution, that the evidence contained in such a statement would have been favorable to him, or that the statement would have been material to guilt or

15

punishment. Further, that because it was his own statement, Petitioner was aware of its contents. The PCR court found that plea counsel had diligently tried to find the statement, but that the statement did not exist. The PCR court further found that Petitioner had failed to demonstrate that, if there were a violation, that the statement was material—that there was a reasonable probability that, but for the government's failure to disclose this evidence, that Petitioner would have refused to plead guilty and gone to trial.

While Petitioner raised these claims in his PCR action, these claims were not ruled upon by the PCR court. Petitioner did not file a motion to alter or amend judgment pursuant to Rule 59(e), SCACR, to preserve the issues for his PCR appeal. Because these claims were not ruled upon by the PCR court, they are unavailable for further collateral review.

Petitioner cannot show cause and prejudice for his procedural default on Grounds Two and Three or that failure to review the claims will result in a fundamental miscarriage of justice. Petitioner attempts to salvage Grounds Two and Three by citing to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). However, that case held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. However, Grounds Two and Three are free-standing claims of a Brady violation and prosecutorial misconduct, and not of ineffective assistance of counsel, therefore *Martinez* is not available to establish cause.

b.     Ground One Defenses Claim and Incrimination Claim

In contrast, *Martinez* is applicable to the procedural default of Petitioner's Ground One claims of ineffective assistance of trial counsel. The *Martinez* court found that "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318 (*citing Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Where the ineffective assistance of trial counsel claim "does not have any merit or . . . is wholly without factual support," the procedural default precludes federal habeas review. *Martinez*, 132 S.Ct. at 1319. Because the undersigned concludes that Petitioner's Ground One Defenses Claim and Incrimination Claim have no merit, they are procedurally defaulted.

In these claims, Petitioner contends that his trial counsel was ineffective for failing to advise him of potential available defenses and of his right against self-incrimination. *Strickland v. Washington*, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered

17

sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). To establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

Here, at the PCR hearing, Petitioner admitted that his counsel discussed with him any possible defenses he could present at trial:

| | |
|---|---|
| The State: | He discussed that with you. He told you what the charges were, did he not? |
| Petitioner: | Yes, ma'am. |
| The State: | And he told you, discussed with you any possible defenses you could present at trial, did he not? You didn't really have any. |
| Petitioner: | Yeah. |
| The State: | Is that yes? He . . . |
| Petitioner: | We . . . |
| The State: | Go ahead, I'm sorry. |
| Petitioner: | We discussed it. |
| The State: | And it was your option to decide to plead guilty or go to trial, is that correct? |
| Petitioner: | Yes, ma'am. |

[Entry #16-1 at 81:2–15]. Independently, Petitioner has failed to present any testimony or evidence that he had any potential defenses to the armed robbery. Therefore, the Defenses Claim is without merit, and it is procedurally defaulted.

Next, even if Petitioner were to establish that his counsel had not apprised him of his right against self-incrimination, he cannot demonstrate prejudice, as prior to the judge accepting his guilty plea, Petitioner was apprised of such right by the judge himself:

The Court:     Where there is a negotiated sentence[,] either I will accept the guilty plea and give you the exact sentence that you have—you, your lawyer, and the solicitor have negotiated, or I will not accept your guilty plea. Do you understand that, Mr. Hilton?

Petitioner:     Yes, sir.

...

The Court:     And do you want me to accept your guilty plea and sentence you according to this negotiated sentence, Mr. Hilton?

Petitioner:     Yes, sir.

...

The Court:     Now when you plead guilty, you give up certain important constitutional rights. As you stand before me, you are presumed to be not guilty of these charges. And you cannot be found guilty of these charges unless the state proves and convinces a jury beyond a reasonable doubt that you are guilty of these charges.  When you plead guilty, you give up that presumption of innocence. Do you understand that, Mr. Hilton?

Petitioner:     Yes, sir.

...

The Court:     You also have the right to remain silent, which means that you cannot be compelled to testify against yourself.  And the jury will be instructed if you are to have a trial, that you have a constitutional right to remain silent, and they cannot draw any inference from the fact that you did not testify in this case.  And cannot hold that against you in any form or fashion.  When you plead guilty, you give up your right to remain silent. Do you understand that, Mr. Hilton?

Petitioner:     Yes, sir.

...

The Court:     And do you want to give up those rights and plead guilty to the charge of armed robbery, Mr. Hilton?

Petitioner:     Yes, sir.

[Entry #16-1 at 7:14–10:8].     Because Petitioner cannot establish prejudice under *Strickland*, his Incrimination Claim is without merit and, therefore, it is procedurally-barred.

Further, to meet the prejudice requirement on review of a guilty plea, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "The petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, ____, 130 S.Ct. 1473, 1485 (2010). "The challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir.2012).

A review of the record demonstrates that a decision to reject the plea bargain would not have been rational under the circumstances.  Petitioner faced separate terms of imprisonment of life, 25, 5, 30, and 5 years if a jury were to have found him guilty of all five charges. There is no reasonable probability that, but for trial counsel's alleged ineffectiveness in failing to advise him of potential defenses and of his right against self-incrimination, that Petitioner would have rejected the negotiated sentence of 25 years for armed robbery and insisted on going to trial on murder, ABWIK, possession of a firearm during a violent crime, armed robbery, and criminal conspiracy. This is particularly true

20

in light of the guilty pleas having been entered by his multiple codefendants, whose testimony would have implicated Petitioner at a trial.

> c.    No Showing of Actual Innocence as to Grounds One, Two, or Three

In the alternative to demonstrating cause and prejudice on his procedurally-barred claims, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the guilty plea colloquy, the court noted that Petitioner had entered into a 25-year negotiated sentence as to the armed robbery charge, which Petitioner confirmed, with a dismissal of the remaining charges [Entry #16-1 at 7, 16–17]. The following exchange occurred:

The Court:    And do you want to plead guilty to armed robbery and for me to give you this negotiated sentence of 25 years?
Petitioner:    Yes, sir.
The Court:    With credit for time served?
Petitioner:    Yes, sir.
...
The Court:    Mr. Hilton, what did you do that makes you guilty of armed robbery?
Petitioner:    I went inside the club, and came back and let Glen know who was inside

| | |
|---|---|
| | the club.  And I went inside the club while he committed the armed robbery.  And afterwards after we left the club, we divided the money. |
| The Court: | What did you do that makes you guilty of armed robbery, Mr. Bradshaw? |
| Bradshaw: | I went inside the club to look, and came back out.  And then get some of money out of the crime. |
| The Court: | You went inside to look for what reason? |
| Bradshaw: | Just look out. |
| The Court: | You were a look out? |
| Bradshaw: | Look out for Glen. |
| The Court: | For someone else to do the armed robbery? |
| Bradshaw: | Yes, sir. |
| The Court: | You got some of the money— |
| Bradshaw: | Yes, sir. |
| The Court: | —afterwards? |
| Bradshaw: | Yes, sir. |
| The Court: | How much money did you get? |
| Bradshaw: | $20. |
| The Court: | $20?  And how much money did you get? |
| [Petitioner][4]: | $100. |

[Entry #16-1 at 17–19].

Thereafter, Lt. Tisdale recited the facts contained in the Factual and Procedural

Background above. After Lt. Tisdale's summary of the events of Christmas Day 2004,

the following colloquy occurred:

| | |
|---|---|
| The Court: | Are all those facts true, Mr. Hilton? |
| Petitioner: | Yes, sir. |
| The Court: | Is there anything that the officer said that is not true? |
| Petitioner: | No, sir. |
| The Court: | And everything he has stated is true and correct? |
| Petitioner: | It is true, yes, sir. |

*Id.* at 24.  Thereafter, Petitioner himself addressed the court, as follows: "I am very sorry

---

[4]     The transcript reflects "The Defendant," regardless of which of the three defendants was speaking.  However, a fair reading of the transcript, combined with Petitioner's habeas claim that he admitted stating "$100" to the court, leads the undersigned to clarify the names of the speaking defendants.

that this incident took place. And I just ask the family to forgive me. And I just—I was wrong. And, you know, I just, I am sorry." *Id.* at 28.

The undersigned's review of the foregoing record does not support a showing of actual innocence. For the foregoing reasons, the undersigned concludes that Petitioner's Ground One Defenses Claim and Incrimination Claim, Ground Two Brady Claim, and Ground Three Prosecutorial Violation are procedurally-defaulted and barred from federal habeas review.

### 2.    Merits Review of Remaining Claims

A merits review of Petitioner's remaining claims does not support his prayer for habeas relief. Ground Four alleges that his guilty plea was involuntary, which is the same issue raised in Petitioner's remaining claims in Ground One. In Ground One, Petitioner claims ineffective assistance of counsel because plea counsel (a) allegedly advised him to tell the plea judge that he received $100 after the robbery; (b) allegedly failed to speak with witness George; and (c) would have provided different advice had he obtained Petitioner's statements from the solicitor. Also in Ground One, Petitioner alleges the PCR court erred in applying the proper standard of *Boykin v. Alabama*.

#### (a)    Advice regarding $100

Plea counsel testified that prior to the plea he told Petitioner that Petitioner would have to tell the plea judge what happened, but did not tell Petitioner what to say. Plea counsel also told Petitioner that a life sentence was possible but did not threaten or pressure him. Plea counsel also presented correspondence from Petitioner requesting that

counsel negotiate the best deal he could. The PCR court found no credible evidence to support Petitioner's claim that his plea was involuntary.

(b)    Failure to speak with George

Petitioner alleges ineffective assistance of counsel for failure to speak with witness George, the nightclub owner who identified Petitioner as having entered the club prior to being shot. Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to result. *Moorehead v. State*, 496 S.E.2d 415, 417 (1998). At PCR, plea counsel testified that he tried to speak with George, but George refused. Petitioner failed to present what testimony George could have given that would have been exculpatory. Because plea counsel attempted to investigate George and no evidence was presented of George's potential testimony, the PCR court found plea counsel was not ineffective in failing to speak to George.

(c)    Different advice if statements obtained

Petitioner alleges that he believes counsel would have provided different advice if he had obtained the statements from the prosecutor.  As discussed above, Petitioner has not demonstrated that a transcribed statement had been in the possession of the prosecution, that the evidence contained in such a statement would have been favorable to him, or that the statement would have been material to guilt or punishment. Further, because it was his own statement, Petitioner was aware of its contents and could have related the content of the statement to plea counsel. The PCR court found that plea

24

counsel had diligently tried to find the statement, but that the statement did not exist and that Petitioner had failed to demonstrate that the statement would have been material. Petitioner has not provided any reason for believing that counsel would have provided different advice.

The undersigned can find no basis in the record on which to overturn the state court decision on the foregoing claims. The record reflects that the Petitioner voluntarily and knowingly entered his guilty plea in open court pursuant to a negotiated sentence.  At his guilty plea, Petitioner stated that he understood he faced a potential punishment of 30 years for armed robbery; affirmed that he wanted to plead guilty to armed robbery and be sentenced to 25 years with credit for time served; that he was satisfied with the services of his lawyer and believed that his lawyer had done everything that he could or should have done to assist him; and that he had no complaint about his lawyer, the solicitor, or any police officers in connection with his case.

Petitioner has not provided any evidence that he did not intend to plead guilty to the armed robbery charge, under oath to the presiding judge, without objection in open court. Statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. *Via v Superintendent, Powhatan Correctional Center*, 643 F.2d 167, 171 (4th Cir. 1981). Petitioner has provided no evidence to show ineffective assistance of counsel in his case. Rather, the record shows that Petitioner had been advised by trial counsel, and that the consequences of his plea were fully explained to

him by the court. The record also clearly shows that Petitioner was given every opportunity to change his mind. Hence, the record shows that Petitioner chose to enter a plea of guilty, and did so freely and voluntarily. *Little v. Allsbrook*, 731 F.2d 238 (4th Cir. 1984); *U.S. v. Futeral*, 539 F.2d 329 (4th Cir. 1976).

Additionally, a negotiated plea was obtained in this case, in which Petitioner acknowledged pleading to armed robbery and to receiving a 25 year sentence, with dismissal of the remaining charges.

In light of the foregoing, it was not objectively unreasonable under § 2254(d)(1) for the PCR judge to reject Petitioner's claim that his guilty plea was not involuntary. As such, there is not a reasonable probability that he would not have pled. In sum, Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); *Williams v. Taylor*, 529 U.S. 420 (2000); *Bell v. Jarvis*, 236 F.3d 149, 157-158 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1) (determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's

26

determination of this issue. As a result, Petitioner has failed to show he is entitled to federal habeas corpus relief.

(d)    *Boykin v. Alabama*

Petitioner asserts that the PCR court erred in not applying *Boykin v. Alabama* in its assessment of his ineffective assistance of counsel claim. The court's review of the order of dismissal reveals no reversible error. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 56; *Tollett v. Henderson*, 411 U.S. 258, 266 (1973); *McMann*, 397 U.S. at 771. Petitioner also must show that "for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill*, 474 U.S. at 57. The PCR court's order of dismissal recites the standard applied in *Boykin v. Alabama*, noting that "[t]o find a guilty plea is voluntarily and knowingly entered into, the record must establish the applicant had a full understanding of the consequences of his plea and the charges against him." [Entry #16-3 at 3]. The PCR court recited that "[g]iven Applicant's burden of proof and the analysis to be applied to this [involuntary guilty plea] claim, the Applicant's claim of involuntary

27

plea is, in essence, a claim of ineffective assistance of counsel, and it will be treated as such." *Id.* at 4. The undersigned finds no merit in this claim of Petitioner's such that it would entitle him to federal habeas relief.

### 3. Appellate Court Error Not Cognizable

Lastly in Ground One, Petitioner contends that the appellate court erred in the handling of his belated direct appeal. Specifically, Petitioner asserts the South Carolina Supreme Court erred in not requiring PCR appellate counsel to brief certain issues. A state prisoner has no federal constitutional right to PCR proceedings in state court. *Lackawanna County Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2001). Because a petitioner may obtain relief from a state court judgment pursuant to § 2254 "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C.A. § 2254(a), Petitioner's complaints about alleged defects in his state PCR proceeding are unavailing in federal habeas review. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir.1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief."). Because this is a claim that is not cognizable in federal habeas review, it must be dismissed.

## III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [Entry# 17] be granted and the petition be dismissed with prejudice. The issuance of this Report and Recommendation moots Petitioner's "Motion

to Amend /Correct" the original Report and Recommendation of February 14, 2013.

[Entry #29].

      IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 2, 2013                                          Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).